## 59279. KENNEDY et al. v. GWINNETT COMMERCIAL BANK.

CARLEY, Judge.

This action arose out of the exercise of a power of sale contained in the first of a series of deeds to secure debt covering the same parcel of land. In February of 1976, appellee-defendant Bank made certain loans to plaintiff-appellants as evidenced by certain promissory notes and secured by an assignment to the Bank of appellants' interest and rights in the third deed to secure debt on the property. Thereafter, appellants went into default on their notes to the Bank. The Bank, holding no better than an assignment of the third deed to secure debt, considered itself to be in a perilous collateral position. In order to obtain a priority position as a secured creditor, the Bank obtained an assignment of the first deed to secure debt on the property by paying the outstanding balance on the note secured by the first deed to secure debt. Subsequently, the subject debt was declared in default and the Bank, pursuant to the power of sale contained in the first deed to secure debt, foreclosed on the property. At the foreclosure sale the Bank was the only bidder and bid in the property for an amount equal to the full amount of principal, interest and attorney fees due under the first deed to secure debt.

Thereafter, appellants filed this instant action against the Bank for damages allegedly resulting from the Bank's actions in acquiring the first deed to secure debt and from an improper exercise of the power of sale thereunder. The Bank answered denying any wrongdoing and asserted certain counterclaims against appellants. This appeal follows the granting of the Bank's motion for summary judgment as to the claims against it.

1. Appellants, citing *Langley v. Stone,* 112 Ga. App. 237 (144 SE2d 627) (1965), urge that the trial court erred in granting the Bank summary judgment as to their claim for damages arising from the alleged improper exercise of the power of sale. In *Langley* a counterclaim for damages in the amount that the fair market value of the property exceeded the amount of the debt secured thereby was held to state a claim against the holder of the security deed who had foreclosed against the property and had failed to have the sale confirmed. "Powers of sale must be fairly exercised. [Cits.] The fact that [Code Ann. § 67-1503] prohibits an action for a deficiency judgment unless a sale under power is confirmed by the superior court, irrespective of the difference in the value of the property and the balance due does not negative the right of an injured party to recover for the breach of duty on the part of one selling under a power of sale in such a case as this. An injured party could rescind the sale

and tender the amount owed on the property or affirm the sale and sue for a breach of the duty to conduct the sale fairly. If the plaintiff's equity of redemption was all the assets he had, it would be impossible for him to tender the amount owed before he could get relief. In affirming the sale and suing for a breach of the said duty the defendant here would be entitled to recover the full difference between the fair market value of the property at the time of the sale and his indebtedness to the seller if the fair market value exceeded the amount of the indebtedness." *Langley,* 112 Ga. App. 237, 239, *supra. Langley* has been cited for the proposition that "[u]nder Georgia law, the grantee-seller under power of sale in a security deed has a duty to sell the property at its fair market value." *Buckhead Doctors' Bldg., Inc. v. Oxford Fin. Cos.,* 115 Ga. App. 534, 536 (154 SE2d 760) (1967). Upon a careful reconsideration of the issue, we conclude that *Langley* and, subsequently, *Buckhead Doctors' Bldg.,* were in error in holding that the duty to conduct a foreclosure sale pursuant to a power of sale "fairly" includes the duty to obtain the "fair market value" of the property, the alleged breach of which gives rise to a claim for damages by the holder of the equity of redemption. We, therefore, expressly overrule, *Langley* and *Buckhead Doctors' Bldg.* insofar as they hold there to be such a duty and such a cause of action.

Our analysis of the duties which are imposed upon the foreclosing party in the exercise of a power of sale must begin with a restatement of the legal relationship created by the security deed containing that power. It is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies. It is likewise clear that when the grantor of a security deed grants a power of sale he does so not for his ultimate benefit but, rather, for the benefit of the grantee. "The power of sale in a mortgage simply gives to the [mortgagee] a remedy for the collection of his debt in a summary way. The presence of such a power in the mortgage simply evidences an agreement between the parties that the [mortgagee] shall be relieved from the necessity of resorting to a foreclosure at law or in equity. That portion of the mortgage containing the power, like all other contracts, is to be construed so as to effectuate the intention of the parties, and the power must be exercised in accordance with the intention of the parties as indicated in the clause in the mortgage conferring the power. The power is conferred for the purpose of enabling the mortgagee to collect his debt." *Garrett v. Crawford,* 128 Ga. 519, 521 (57 SE 792) (1907). However, even though the power of sale is conferred upon the grantee for the purpose of facilitating his collection of the amount of the underlying debt which is secured by

the property, the power must be exercised fairly. Code Ann. § 37-607. We are in agreement with *Langley* insofar as it holds that the breach of this duty to conduct the sale "fairly" gives rise to a claim for damages to the injured holder of the equity of redemption. We disagree with *Langley* and *Buckhead Doctors' Bldg.* insofar as they hold that the failure to obtain the "fair market value" of the property at the sale, standing alone, is a breach of this duty.

We find the error in *Langley* was in its reliance upon the confirmation statute for its holding that a statutory duty is imposed upon the grantee to exercise his power of sale so as to obtain the fair market value of the property. Code Ann. § 67-1504 provides that no sale made under a power shall be confirmed unless the superior court is satisfied the property brought its true market value. However, there is no requirement that the foreclosing party initiate proceedings to have the sale confirmed. Confirmation is a proceeding which results *only* in the event the sale did not satisfy the underlying debt and a deficiency judgment against the debtor is to be sought. Thus, the public policy behind confirmation proceedings is not to impose an affirmative duty upon the foreclosing party to obtain the true market value of the property; it is to protect the debtor from an action to obtain a deficiency judgment when the property was sold for a sum less than its true market value. *First Nat. Bank v. Kunes,* 128 Ga. App. 565 (197 SE2d 446) (1973). "From the perspective of history and a consideration of the economic factors then extant, it is evident the intendment of the General Assembly . . ., in adopting this statute, was to provide for debtor relief." *First Nat. Bank v. Kunes,* 230 Ga. 888, 890 (199 SE2d 776) (1973). Thus, as we construe the confirmation statute, it provides the debtor with protection against an unfair deficiency claim and not, as *Langley* and *Buckhead Doctors' Bldg.* held, with a basis for seeking damages in the event the sale does not result in obtaining the fair market value of the property. To give those cases continued sanction would, in effect, *require* the foreclosing party to seek and obtain confirmation of the sale in every instance—thereby judicially establishing the true market value of the property—or face the possibility of a suit for damages no matter what amount the sale produced if, in the debtor's opinion, that amount was not equivalent to the fair market value of the property. This would be true even though the property were sold for an amount *greater* than the underlying debt and thus no deficiency would be sought. Such would be the illogical extension of a rule that the debtor is entitled to recover the "full difference between the fair market value of the property at the time of the sale and his indebtedness to the seller if the fair market value exceeded the amount of the indebtedness." *Langley,* 112 Ga. App. 237, 239, supra.

It is our opinion that when a power of sale is exercised " '[a]ll that is required of [the foreclosing party] is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith.' [Cits.]" *Giordano v. Stubbs,* 228 Ga. 75, 78 (184 SE2d 165) (1971). We are not willing to construe this statute—which is operative only in the limited circumstance that the sale of the property does not satisfy the underlying debt and then solely in the discretion of the parties—so as to engraft judicially upon the power of sale a tacit requirement to seek and secure confirmation in every instance that the power is exercised or face the possibility of suit merely because the debtor is of the belief fair market value was not obtained. Such is not the intent of the confirmation statute. It merely provides for a proceeding whereby the court is called upon to determine whether the duty to conduct the sale "according to the terms" of the deed and "in good faith" has been met and the debtor's concomitant right to have the property extinguish his debt to the maximum extent possible is protected. If no confirmation is sought or, if sought, is not obtained, the debtor has secured the full benefit of the confirmation statute because his debt is, in effect, extinguished. If confirmation is sought and obtained, the debtor is likewise afforded the full measure to which he is entitled, an extinguishment of his debt to the extent of the true market value of the property securing it. In our opinion the debtor is entitled to no other form of affirmative relief under the confirmation statute. *First Nat. Bank v. Kunes,* 128 Ga. App. 565, supra.

Our analysis is confirmed by *Giordano v. Stubbs,* 228 Ga. 75, supra. In that case the Supreme Court rejected the argument that inadequacy of price paid upon the sale of property under power, standing alone, is sufficient reason to find that the sale was not conducted in good faith. "It is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside by a court of equity. [Cits.]" *Giordano,* 228 Ga. at 79, supra. Thus, implicit in this holding is that the duty to sell the property according to the terms of the deed and to conduct the sale in good faith does not include a requirement that a specific amount such as the fair market value of the property be obtained. If the sale is conducted according to the terms of the power and in good faith the foreclosing party has satisfied his duties and obligations to the debtor pretermitting the alleged inadequacy of price. The foreclosing party has a duty to obtain that amount which results from a sale conducted according to the terms of the deed and in good faith. In determining whether this

duty under a power of sale has been breached the focus is on the manner in which the sale was conducted and not solely on the result of the sale. The foreclosing party is not an insurer of the results of his exercise of the power of sale; his only obligation is to sell according to the terms of the deed and in good faith and to obtain the amount produced by such a sale. If the manner in which the sale was conducted is otherwise unobjectionable, the mere fact that, in the debtor's opinion, it brought an inadequate price does not demonstrate that the power was exercised other than in good faith. It is only when the sale is conducted in such a manner and under such "circumstances" as to result in a grossly inadequate price that the foreclosing party has breached his duty to the debtor. Citation in the *Giordano* dissent of *Langley* and *Buckhead Doctors' Bldg.* together with argument that there is a duty upon the grantee-seller under a power of sale to sell the property at its fair market value was unpersuasive to the majority. It is likewise unpersuasive to us who believe that the majority decision in *Giordano* implicitly signifies the end of *Langley's* viability as authority for the proposition that the mere failure of the foreclosing party to obtain the fair market value of the property may be asserted as a breach of the power of sale and the basis for an independent claim for damages. We reiterate that "[i]t is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that" the foreclosing party has breached his duty under the power of sale. *Giordano,* 228 Ga. 75, 79, supra. It is only in these "circumstances," and not the mere failure to obtain fair market value or an "adequate" price, that a claim for damages arises against the foreclosing party for having failed to properly exercise his power of sale. Insofar as appellants rely upon *Langley* for the proposition that the Bank's mere failure to obtain the fair market value of the property at the sale is, in and of itself, a breach of the exercise of the power of sale which gave rise to their claim for damages, that reliance is misplaced and summary judgment was not erroneously granted to the Bank. When failure to obtain an "adequate" price upon the exercise of a power of sale is alleged to be a breach of duty thereunder, *Giordano,* not *Langley,* is, henceforth, the appropriate reference point. If the sale is conducted according to the terms of the deed and in good faith, alleged failure to obtain an "adequate" price is not a sufficient basis upon which the debtor can base a claim for damages resulting from the exercise of that power.

2. Turning now to the facts existing in the instant case, appellants allege two "circumstances" surrounding the sale of the

subject property which they urge would authorize a finding under *Giordano* that it was not conducted by the Bank "in good faith," thereby contributing to a grossly inadequate price and ultimately resulting in the Bank's breach of its duties under the power of sale. Appellants first contend the trial court erred in granting summary judgment on the issue of whether the Bank's "ten day" letter pursuant to Code Ann. § 20-506, dated March 8, 1977, estopped the Bank from conducting the foreclosure sale on the first Tuesday in April, 1977. Appellants argue that this letter led them to believe that the advertisement of the foreclosure sale would not begin until sometime after the ten days had elapsed. Appellants then argue that because the advertisement must run once a week for four consecutive weeks, the property could have been sold no earlier than the first Tuesday in May rather than the first Tuesday in April, 1977. We do not agree.

Implicit in apellants' argument is a contention that they are entitled to receive and to rely upon notice of the exercise of the power of sale other than that provided for in the security deed and the statute. Such is not the law in this state. " 'In the absence of a specific provision to that effect, the holder of a mortgage or trust deed with power of sale, is not required to give notice of the exercise of the power to a subsequent purchaser or incumbrancer . . .' [Cits.] The sale in this case was advertised as provided in the security deed, and, also, as provided in Code Ann § 67-1506. This was sufficient." *Giordano v. Stubbs,* 228 Ga. 75, 78, supra. Furthermore, appellants made no effort to pay the principal and interest after receiving the "ten day" letter and, as one of the appellants appeared at the foreclosure sale, they apparently had actual notice thereof. The Bank having fully complied with the terms of the deed and the statutes concerning advertisement of the sale and appellants being entitled to receive or rely upon no other, we find no merit in this argument.

Appellants also attack the foreclosure process because the attorney who initiated that process on behalf of the Bank had represented appellants and two others in connection with the 1972 acquisition of the same property. Although that attorney transmitted the demand letter and arranged for the legal advertisement, the actual foreclosure sale was concluded by a different lawyer. There is nothing in the record indicating that any confidences or secrets were acquired in the earlier transaction which could have been used to appellants' detriment in connection with the foreclosure. Accordingly, we are satisfied that the attorney's prior representation of appellants in the 1972 real estate transaction did not preclude him from rendering legal services to the Bank in connection with the same property some five years later. There is no

evidence in the record that apellants were in any manner prejudiced by reason of the attorney's limited role in the foreclosure proceedings. *Bugg v. Chevron Chemical Co.,* 224 Ga. 809 (165 SE2d 135) (1968), and *Tilley v. King,* 190 Ga. 421 (9 SE2d 670) (1940), cited by appellants are inapplicable on their facts.

3. It, therefore, follows from Division 2 that there was no evidence of such "circumstances" surrounding the manner in which the sale in the instant case was conducted as would authorize a finding that it was conducted by the Bank other than in good faith and in accordance with the terms of the deed and all statutes. The sole evidence to the contrary is premised upon the Bank's alleged failure to obtain the fair market value of the property in an otherwise unobjectionable foreclosure sale. *Langley* is no longer viable precedent for the proposition that this is evidence of the Bank's breach of any duty owed to appellants in the exercise of its power of sale. Nor is this evidence sufficient under *Giordano* to demonstrate the Bank's breach of its duty to sell the property according to the terms of the security deed and in good faith. Accordingly, the Bank having pierced appellants' pleadings and having demonstrated its entitlement to judgment as a matter of law, summary judgment was properly granted in its favor.

*Judgment affirmed. Deen, C. J., Quillian, P. J., McMurray, P. J., Shulman, Banke, Birdsong and Sognier, JJ., concur. Smith, J., concurs specially.*

ARGUED JANUARY 9, 1980 —
DECIDED JULY 15, 1980 —

*J. C. Rary,* for appellants.
*G. Hughel Harrison, John Doran,* for appellee.

SMITH, Judge, concurring specially.

I agree with the majority that the trial court's grant of appellee's motion for summary judgment was proper. However, I believe the majority sweeps too broadly in attempting to overrule *Langley v. Stone,* 112 Ga. App. 237 (144 SE2d 627) (1965), cited in *Buckhead Doctors' Building v. Oxford Fin. Cos.,* 115 Ga. App. 534 (154 SE2d 760) (1967). As the trial court noted in its well-reasoned order granting summary judgment to appellee: "*Langley v. Stone,* 112 Ga. App. 237 (1965) is inapposite."

The party asserting the right to damages in both *Langley* and *Buckhead Doctors' Building* was the holder of the equity of

redemption. The duty imposed in *Langley* (i.e. to sell the property at its fair market value) is a duty which, under both the facts and rationale of that case, runs from the grantee-seller under a power of sale to the holder of the equity of redemption. As the court stated: "To deny [plaintiff] the right to the relief he here seeks would be to rob him of the use of the full value of his equity of redemption in the event the fair market value of the property exceeded the amount of the first loan or exceeded the amounts of both loans." Id at 240. In the instant case, the plaintiff is not the holder of the equity of redemption, but a holder of an inferior deed to secure debt. ·

The majority has extended the holding of *Langley* and then, in the same opinion, has attempted to overrule the holding of the case as extended. In my view, the extension, and therefore the "overruling," is unnecessary.[1]

---

[1]Since *Langley* is inapposite to the instant case, a determination as to whether *Langley* has been overruled by implication in *Giordano v. Stubbs,* 228 Ga. 75 (184 SE2d 165) (1971), is unnecessary. However, in view of the discussion in the majority opinion, I believe it should be pointed out that *Giordano,* unlike *Langley* and *Buckhead Doctors' Building,* is concerned with *setting aside* a sale under power. *Langley* and *Buckhead Doctors' Building* are concerned with a right of *damages* where a grantee-seller under a power of sale has breached a duty to sell property at its fair market value.